## TYRRELL v. CITY OF NEW YORK.

(Supreme Court, Trial Term, Queens County. July, 1905.)

MUNICIPAL CORPORATIONS—CONTRACTS—TRANSACTIONS WITH OFFICERS—FRAUD.

The mayor of a city, who was also a member of the board of health, conveyed to another, by a sham transfer, a dilapidated building in the city, the rental value of which was not more than $400 a year, at the outside. This conveyance was made while the board of health was considering the matter of acquiring a pesthouse, and a few months later, during the closing days of the mayor's administration, the board of health leased the property from the transferee for a pesthouse at an annual rental of $3,000. Held, that the lease was a fraud on the city.

Action by Edward M. Tyrrell against the city of New York. Judgment for defendant.

F. H. Van Vechten and H. M. Hitchings, for plaintiff.
Dennis O'Leary, Asst. Corp. Counsel, for defendant.

GAYNOR, J. In 1892 Gleason was mayor of Long Island City, and a member of the city board of health. That board was considering and discussing the matter of acquiring a pesthouse. While this was going on Gleason conveyed to Tyrrell, this plaintiff, a building on Thompson avenue in that city, on October 4, 1892. On December 29th following the board of health took a lease of it of the plaintiff for five years at $3,000 a year for a pesthouse. It had been built for a hotel as a means of exploiting a tract of vacant land in that vicinity, but the enterprise was a failure. The building was in a vacant and bleak locality in the rear of the county courthouse. All of our judges knew the miserable locality. It had stood vacant for several years, apparently from the time it was built, and was in a tumble-down condition. Even the windows were broken and blown out. Its rental value was about $400 a year. It could not have been let for that, if at all. Gleason's testimony of letting some of the roms in it to families has to be taken with much allowance. The rooms were not adapted for such a use.

The election for mayor had been held in November and Gleason and his government had to get out on December 31st. They hurried the lease through in their very last days of office. The transaction was a gross fraud on the city. This plaintiff was Gleason's dummy. Being a member of the board of health, Gleason could not lease the property himself to that board, and so he made a sham transfer of it to this plaintiff to enable the thing to be done. Although the property was not worth $10,000 the deed to the plaintiff expresses a consideration of $25,000, but nothing was paid at the time. The plaintiff claims that afterwards, some time before April 19, 1905 (when this action was first tried, as will be hereafter mentioned), he paid Gleason by giving him stock in an electric light company of the par value of $25,000. I give this no credence. The whole scheme is too transparent to permit of any one being deceived about it by false testimony. The property was subject to a mortgage of $4,000 when transferred to the plaintiff; and yet the plaintiff says he paid the whole $25,000 in such stock. That mortgage was foreclosed shortly after the conveyance to the plaintiff, at all events prior to the said first trial of this action in 1895, and a judgment of foreclosure and sale entered, and the property was sold thereunder. And yet the plaintiff professes to have purchased the property as an investment. If so, why would he allow a foreclosure for only $4,000?

When Sanford the new mayor came in on January 1st, he repudiated the lease, and the board of health never used the property. This action was thereupon brought on April 14, 1893, for the first three months' rent, viz., $750, and tried on April 19, 1895, before Mr. Justice Barnard. He found the transaction a fraud, and gave judgment for the defendant. For no good reason which has been disclosed or is inferable, that judgment was never entered by the attorney for the city. Mr. Justice Barnard died in 1904, and it is said that it cannot now be entered. In May, 1905, namely, after a lapse of 10 years from the first trial, and after Judge Barnard's death, this case was brought to trial a second time before me at

the Queens County Trial Term, and the complaint was amended on the trial so as to recover the rent for the full term, viz., $15,000 and interest, viz., upwards of $23,000. The facts above recited were not then proved by the city though they had been proved and found by Judge Barnard on the former trial; in fact the defence put in for the city was a merely formal one. The parties having been since called before the court, the plaintiff produced and put in evidence the stenographer's minutes of the testimony on the former trial, and I find the above facts therefrom.

On the last hearing before me, viz., on July 18, 1905, the plaintiff was examined in his own behalf, and gave an entirely different version to the one he gave before Judge Barnard of how and for how much he bought the property and how he paid for it. After having sworn repeatedly on the trial before Judge Barnard that he gave Gleason $25,000 of the electric company stock at par, he now says he gave him only $9,500 of such stock, and notes and other things for the balance, and he brings old certificates of shares of that amount and an old note for $900 into court. He also reveals that he bought the property without examining it, or even seeing it except from a distance. He and Gleason were intimates in business and otherwise.

The answer is meagre in setting up fraud and collusion as a defence, but no objection to evidence of such defence was raised, and the question of the defence being made out was fully argued at the close. The gross disparity between the rent fixed by the lease and the rental value is enough in itself to show fraud by the other members of the board of health than Gleason, not to mention the other earmarks of fraud. The quite modern solemn saying that fraud cannot be presumed but must be proved is made much of. It has done much duty in its time to prevent judgments of fraud, without it being always perceived that it is a rather solemn absurdity. Of course fraud must be proved and cannot be presumed, but so must the price of a cow or a pig, and it cannot be presumed. A solemn and wise statement of the former is quite as absurd as a like statement of the latter. The rule is that no fact may be presumed but must be proved, and fraud is found on sufficient evidence and the deductions therefrom the same as any other fact.

Judgment for the defendant.